298 S.E.2d 866

**STATE of West Virginia**

v.

**Benjamin Franklin JACKSON.**

**No. 15419.**

Supreme Court of Appeals of West Virginia.

Dec. 15, 1982.

S. Clark Woodroe, Asst. Atty. Gen., Charleston, for appellee.

Andrew J. Goodwin, F. Christian Gall, Jr., Charleston, for appellant.

HARSHBARGER, Justice:

Benjamin Franklin Jackson was convicted in Kanawha County for the first-degree murder of Stephen Michael Weems, despite his insanity defense; but the jury recommended mercy. He claims these errors: admission of his tape-recorded confession, the medical examiner's testimony, the state psychiatrist's testimony on rebuttal, and the trial judge's failure to present "not guilty by reason of insanity" as a possible verdict and to instruct about what happens to a defendant adjudged criminally insane.

Jackson and Weems had been friends for years. On the morning of the shooting in August, 1978, Jackson bought a handgun and went to Weems' home. They drank and smoked marijuana in Jackson's car, with Weems in the driver's seat. Weems' brother saw Weems leave the car and run, and Jackson also alight, hold his gun in both hands, aim, and shoot Weems. The fatal bullet entered Weems' right arm, travelled through his chest and lodged in his left nipple, and another bullet went through his buttocks.

Jackson hid on a nearby hillside, but as local, county and state police searched for him he descended and surrendered, two to three hours after the killing. Police took him to their station, advised him of his constitutional rights, he waived counsel and gave them a tape-recorded statement. They took him back to the scene where he retrieved the gun he had hidden there.

He was put in Kanawha County Jail, and his lawyer immediately moved that he be examined for mental illness. He was treated, examined, treated and examined, *et seq.*, until November, 1980.

I.

Jackson's confession is highly suspect because only a few days after the homicide, which happened on the same day he gave the statement, he was ordered to Weston State Hospital and was there determined incompetent to go to trial. He remained incompetent for one and a half years.

Three state hospital psychiatrists testified that he suffered from chronic undifferentiated schizophrenia and that he was mentally ill at the time of the offense, and another psychiatrist agreed. The only psychiatrist who believed he was responsible for his conduct was Dr. Knapp, who had been appointed by the court and was used by the state for rebuttal. He did not testify at the suppression hearing.

Of course, if Jackson was insane on the day he killed Weems, being the same day his recorded statement was taken, he would be incompetent to waive counsel or to make a statement. The State must prove admissibility of a confession by a preponderance of the evidence. Syllabus Point 2, *State v. Woods*, 169 W.Va. 767, 289 S.E.2d 500 (1982); *State v. Wilcox*, 169 W.Va. 142, 286 S.E.2d 257 (1982); *State v. Wimer*, 168 W.Va. 417, 284 S.E.2d 890 (1981). The state's burden is heavy. *State v. Boyd*, 167 W.Va. 385, 280 S.E.2d 669, 682 (1981).

"Confessions elicited by law enforcement authorities from persons suspected

of crimes who because of mental condition cannot knowledgeably and intelligently waive their right to counsel are inadmissible." Syllabus Point 1, *State v. Hamrick*, 160 W.Va. 673, 236 S.E.2d 247 (1977).

Syllabus Point 5, *State v. Daggett*, 167 W.Va. 411, 280 S.E.2d 545 (1981). *See also State v. Adkins*, 170 W.Va. 46, 289 S.E.2d 720, 727–728 (1982).

■ However, a trial judge's determination that a confession is admissible will not be disturbed unless he was plainly wrong. *State v. Gwinn*, 169 W.Va. 456, 288 S.E.2d 533 (1982); Syllabus Point 3, *State v. Vance*, 162 W.Va. 467, 250 S.E.2d 146 (1978).

This case is reversed on other grounds, but we would expect that on remand defendant's competency to knowingly and intelligently waive his right to counsel and his capacity to make a statement, be carefully studied before a decision is made that his statement is admissible. Further evidence may be elicited. *Accord State v. Adkins, supra.*

## II.

Jackson argues that his incriminating statements to the court-appointed psychiatrist, Dr. Knapp, should have been inadmissible because they were part of a custodial interrogation and were not prefaced by *Miranda* warnings, and because he did not have his lawyer with him.

*Miranda* warnings were devised to make sure a criminal defendant understands his Fifth Amendment privilege against self-incrimination and his Sixth Amendment right to counsel. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966). They are appropriate at "custodial interrogations" and protect a defendant from involuntarily incriminating himself, but are not the only means of guaranteeing a defendant freedom from involuntary self-incrimination. Chief Justice Warren wrote for the *Miranda* majority:

Unless adequate protective devices are employed to dispel the compulsion inherent in custodial surroundings, no state-

ment obtained from the defendant can truly be the product of his free choice.

.    .    .    .    .

To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege, and *unless other fully effective means are adopted* to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required [reading of *Miranda* warnings].

.    .    .    .    .

We have already pointed out that the Constitution does not require any specific code of procedures for protecting the privilege against self-incrimination during custodial interrogation. Congress and *the States are free to develop their own safeguards* for the privilege, *so long as they are fully as effective* as those described above in informing accused persons of their right of silence and in affording a continuous opportunity to exercise it. In any event, however, the issues presented are of constitutional dimensions and must be determined by the courts.

*Id.*, 384 U.S. at 458, 478, 490, 86 S.Ct. at 1619, 1630, 1636, 16 L.Ed.2d at 714, 726, 732, 10 A.L.R.3d at 1001, 1014, 1020. (Emphasis supplied.)

The United States Supreme Court has declared that both Fifth and Sixth Amendment rights are implicated in court-ordered pre-trial psychiatric inquiries. *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). *Smith* required that a defendant be given *Miranda*-type warnings before being asked to undergo a court-ordered psychiatric examination for competency.

There are significant differences between Smith's case and Jackson's. Smith was a criminal defendant in a Texas death penalty case. His trial had been bifurcated and the guilty verdict resulted from the

first phase. He did not plead insanity or ask for a psychiatric evaluation, or attempt to introduce psychiatric evidence. Nonetheless, the state in the sentencing phase introduced psychiatric testimony about the probability that he was dangerous. The evidence came from a pre-trial psychiatric interview ordered by the court to determine his competence to stand trial, not his responsibility for criminal activity. The court found the stage of the bifurcated trial irrelevant, but emphasized defendant's decision not to proffer any psychiatric testimony. Use of evidence from a pre-trial competency psychiatric examination at a different part of the trial for a wholly different reason required that Smith be advised of his right to remain silent and be assisted by a lawyer. If he had chosen to remain silent, he could have been ordered to undergo the competency examination without voluntary consent, but the result could only be applied to evaluate his competency. *Id.,* 451 U.S. at 468, 101 S.Ct. at 1876, 68 L.Ed.2d at 372.

Jackson was ordered for psychiatric examination about his competence to stand trial *and* his criminal responsibility. He introduced a great deal of psychiatric testimony to prove that he was insane. The state, then, in rebuttal, used Knapp's testimony from an April, 1979 examination to prove he was sane; and Knapp also revealed statements by Jackson about events leading up to the crime.

The *Smith* court consciously distinguished Jackson's situation:

Nor was the interview analogous to a sanity examination occasioned by a defendant's plea of not guilty by reason of insanity at the time of his offense. When a defendant asserts the insanity defense and introduces supporting psychiatric testimony, his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he interjected into the case. Accordingly, several courts of appeals have held that, under such circum-

stances, a defendant can be required to submit to a sanity examination conducted by the prosecution's psychiatrist. See, e.g., *United States v. Cohen,* 530 F.2d 43, 47–48 (CA 5), *cert. denied,* 429 U.S. 855, 97 S.Ct. 149, 50 L.Ed.2d 130 (1976); *Karstetter v. Cardwell,* 526 F.2d 1144, 1145 (CA9 1975); *United States v. Bohle,* 445 F.2d 54, 66–67 (CA7 1971); *United States v. Weiser,* 428 F.2d 932, 936 (CA2 1969), *cert. denied,* 402 U.S. 949, 91 S.Ct. 1606, 29 L.Ed.2d 119 (1971); *United States v. Albright,* 388 F.2d 719, 724–725 (CA4 1968); *Pope v. United States,* 372 F.2d 710, 720–721 (CA8 1967) (*en banc*), vacated and remanded on other grounds, 392 U.S. 651, 88 S.Ct. 2145, 20 L.Ed.2d 1317 (1968).

*Id.,* 451 U.S. at 465, 101 S.Ct. at 1874, 68 L.Ed.2d at 370 (footnote omitted).

Apparently, the Supreme Court believed that by pleading insanity and introducing psychiatric testimony, a defendant waives his Fifth Amendment privilege against self-incrimination. *See* Note, The Fifth Amendment and Compelled Psychiatric Examinations: Implications of *Estelle v. Smith,* 50 Geo.Wash.L.Rev. 275, 288 (1982). We do not agree. Constitutional rights should not be easily waived. *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Syllabus, *State v. Mollohan,* 166 W.Va. 60, 272 S.E.2d 454 (1980), citing *Browning v. Boles,* 149 W.Va. 181, 139 S.E.2d 263 (1964).

We agree with those courts that hold that a defendant may be compelled to participate in a psychiatric examination for competence to stand trial and for criminal responsibility if he presents or intends to present an insanity defense relying on expert psychiatric or psychological evidence.[1] We acknowledge that a court-ordered psychiatrist is, for purposes of a self-incrimination analysis, a state agent who questions a defendant while he is in custody. Judge Langpry of the Oregon Court of Appeals explained:

---

1. Annot., Validity and construction of statutes providing for psychiatric examination of accused to determine mental condition, 32 A.L.R.2d 434 (1953 and later case service); *see generally,* Note, Requiring a criminal defendant to submit to a government psychiatric examination: an invasion of the privilege against self-incrimination, 83 Harv.L.Rev. 648 (1969–70).

[T]he psychiatrist examining the defendant for the state is for all purposes an officer of the state and no different than any police officer when questioning a defendant.

.    .    .    .    .

The key reason for requiring that the psychiatrist repeat such a [*Miranda*] warning is to dispel any possibility that the defendant may believe that statements made to the psychiatrist would not or could not be used in court against him. The reasons for this possible misapprehension lie in the vagueness of what is protected by the confidentiality of the doctor-patient relationship. Even more compelling is the need to dispel any belief that statements made to the psychiatrist would be for the defendant's own good. The defendant must be aware that the psychiatrist is employed by his adversary and is not primarily his healer.

*State v. Corbin*, 15 Or.App. 536, 516 P.2d 1314, 1318–19, later app. 22 Or.App. 505, 539 P.2d 1113 (1973).

*See also* Meister, *Miranda* on the Couch: An Approach to Problems of Self-Incrimination, Right to Counsel, and *Miranda* Warnings in Pre-Trial Psychiatric Examinations of Criminal Defendants, 11 Col.J.L. & Soc. Problems, 403, 427 (1974–75); Comment, 50 Geo.Wash.L.Rev., *supra* at 303.

The Supreme Court in *Smith* also noted that a psychiatrist who testifies to facts other than competency or criteria of criminal responsibility, becomes a state agent who derived information from a custodial interrogation:

The considerations calling for the accused to be warned prior to custodial interrogation apply with no less force to the pretrial psychiatric examination at issue here. Respondent was in custody at the Dallas County Jail when the examination was ordered and when it was conducted. That respondent was questioned by a psychiatrist designated by the trial court to conduct a neutral competency examination, rather than by a police officer, government informant, or prosecuting attorney, is immaterial. When [the psychiatrist] went beyond simply reporting to the court on the issue of competence and testified for the prosecution at the penalty phase on the crucial issue of respondent's future dangerousness, his role changed and became essentially like that of an agent of the State recounting unwarned statements made in a post-arrest custodial setting. During the psychiatric evaluation, respondent assuredly was "faced with a phase of the adversary system" and was "not in the presence of [a] person [ ] acting solely in his interest."

*Estelle v. Smith*, 451 U.S. at 467, 101 S.Ct. at 1875, 68 L.Ed.2d, at 371–372.

■ Therefore, a pre-trial psychiatric examination is a "custodial interrogation" by a state agent. The Fifth Amendment and W.Va. Const. art. III, § 5 self-incrimination privileges are implicated.

It is possible to compel a defendant to be examined by a psychiatrist to evaluate his insanity defense, without abrogating his Fifth Amendment privilege against self-incrimination. While some courts have required *Miranda* warnings,[2] we feel safeguards other than *Miranda* protections can adequately protect a defendant and also provide the state an opportunity to get its own evidence about mental condition.

■ There should be an *in camera* hearing before the government psychiatrist testifies, to excise any portions of his report and proposed testimony that include incriminating statements. A psychiatrist can testify to the bases of his medical opinion, *State v. Rhodes*, 166 W.Va. 402, 274 S.E.2d 920 (1981), but without reference to a defendant's specific statements about his criminal offense. This *in camera* hearing should obviate the need for an instruction limiting a jury's consideration of a psychiatrist's testimony to facts or opinions on the issue of insanity (probably a useless act when a medical person has testified to a defendant's revelation to him

---

**2.** *Estelle v. Smith, supra; Houston v. State,* Alaska, 602 P.2d 784 (1979); *State v. Corbin, supra;* *Shepard v. Bowe,* 250 Or. 288, 442 P.2d 238 (1968).

of incriminating facts).[3] Should there be any question about any such revelation to the medical witness, inadvertently mentioned to the jury, then, of course, a limiting instruction should be given.[4]

A defendant who pleads insanity does not have the privilege to "remain silent" as *Miranda* warnings advise. His refusal to be examined—an event that necessarily involves talk—may result in sanctions such as preventing him from submitting his own medical evidence of insanity. *Estelle v. Smith, supra* at fn. 10. The apparent coercive nature of the interview is alleviated by the *in camera* hearing protection so that his statements cannot be used against him. This protects the first two prongs of *Miranda* warnings.

The third element of a defendant's *Miranda* protections involves his right to counsel. This federal and concomitant state right to counsel, W.Va. Const. art.

III, § 14, arise at each "critical stage" of an adversarial criminal process. *Moore v. Illinois*, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977); *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *State ex rel. Partain v. Oakley*, 159 W.Va. 805, 227 S.E.2d 314 (1976). A "critical stage" is "where the defendant's right to a fair trial will be affected." Syllabus Point 2, *State v. Tiller*, 168 W.Va. 522, 285 S.E.2d 371 (1981). Certainly, the results of a psychiatric examination bear greatly on his fair trial rights.[5] *Estelle v. Smith, supra*.

We find that W.Va. Const. art. III, § 14 affords a defendant the right to assistance of counsel at a pre-trial psychiatric interview, but does not require counsel's presence at the actual examination.[6] Some state courts have permitted a lawyer to be present,[7] but we believe counsel's presence could affect the examination's accuracy and effectiveness.[8] *See generally* Annot.,

---

**3.** Jackson's trial predated the effective date of West Virginia Rules of Criminal Procedure. Those rules cover the situation before us today. Rule 12.2(c) provides:

*"Psychiatric Examination.* In an appropriate case, the court may, upon motion of the attorney for the state, order the defendant to submit to a psychiatric examination by a psychiatrist designated for this purpose in the order of the court. *No statement made by the accused in the course of any examination provided for by this rule, whether the examination shall be with or without the consent of the accused, shall be admitted in evidence against the accused on the issue of guilt* in any criminal proceeding." (Emphasis supplied.)

Statements made to a court-ordered psychiatrist may never be used on the issue of guilt. Our rule tracks federal law. 18 U.S.C. § 4244; Federal Rules of Criminal Procedure 12.2(c). This protection is consistent with *Estelle v. Smith's supra*, admonition about use of involuntarily obtained psychiatric examination evidence.

**4.** *Accord, In Re Spencer*, 46 Cal.Rptr. 753, 63 Cal.2d 400, 406 P.2d 33 (1965); *People v. Early*, 25 Mich.App. 363, 181 N.W.2d 586 (1970); *State v. Whitlow*, 45 N.J. 3, 210 A.2d 763 (1965).

**5.** Several courts have decided a pre-trial psychiatric interview is not a critical stage. *See generally*, cases cited in Annot., Right of accused in criminal prosecution to presence of counsel at court-appointed or -approved psychiatric examination, 3 A.L.R.4th 910, § 4(a) (1981 and supp.). *United States ex rel. Wax v. Pate*, 409 F.2d 498 (7th Cir.1969) *cert. denied*, 396 U.S. 830, 90 S.Ct.

83, 24 L.Ed.2d 81; *Strickland v. State*, 247 Ga. 219, 275 S.E.2d 29 (1981).

**6.** If the dangers of not having counsel present are eliminated by legislation or rule, then no rights are violated. *See United States v. Wade, supra* 388 U.S. at 239, 87 S.Ct. at 1938–1939; *Thornton v. Corcoran*, 132 App.D.C. 232, 407 F.2d 695, 699, 702 (D.C.Cir.1969); *Tarantino v. Superior Court in and for Marin County*, 122 Cal.Rptr. 61, 48 Cal.App.3d 465 (1975). Comment, Right to Counsel at the Pre-trial Mental Examination of an Accused, 118 U.Pa.L.Rev. 448 (1969–70).

**7.** *Howe v. State*, Alaska, 611 P.2d 16 (1980); *Lee v. County Court of Erie County*, 27 N.Y.2d 432, 318 N.Y.S.2d 705, 267 N.E.2d 452 (1971), *cert. denied*, 404 U.S. 823, 92 S.Ct. 46, 30 L.Ed.2d 50 (1971); *State v. Corbin*, 15 Or.App. 536, 516 P.2d 1314, later app. 22 Or.App. 505, 539 P.2d 1113 (1973). *Cf. People v. Whitfield*, 97 Misc.2d 104, 411 N.Y.S.2d 104 (1978) (wherein a one-way mirror was used to permit defense counsel's presence); *In Re Spencer*, 46 Cal.Rptr. 753, 63 Cal.2d 400, 406 P.2d 33 (1965) (defense counsel's presence at interview is discretionary with court); *People v. Early, supra* fn. 4 (discretionary with court).

**8.** *Estelle v. Smith, supra; United States v. Albright*, 388 F.2d 719 (4th Cir.1968); *United States v. Bohle*, 445 F.2d 54 (7th Cir.1971); *United States v. Baird*, 414 F.2d 700 (2d Cir.1969), *cert. denied*, 396 U.S. 1005, 90 S.Ct. 559, 24 L.Ed.2d 497 (1970); *United States v. Cohen*, 530 F.2d 43 (5th Cir.1976), *cert. denied*, 429 U.S. 855,

Right of Accused in Criminal Prosecution to Presence of Counsel at Court-Appointed or -Approved Psychiatric Examination, 3 A.L.R.4th 910 (1981).

■ Further, we find that Alaska's requirement that psychiatric interviews be tape-recorded, is useful. In *Houston v. State*, Alaska, 602 P.2d 784, 796 (1979), Justice Rabinowitz wrote:

> We think that all such future psychiatric interviews should be tape recorded in their entirety. This requirement will aid in attaining the goal of accuracy in the trial and, in the discretion of the defendant and his counsel, offers a potentially adequate alternative to the physical presence of defense counsel during the psychiatric interview.

It is not uncommon for psychiatrists to tape-record their interviews.[9] Copies of such tapes can be made available to both the prosecutor and the defendant's lawyer.

■ When a court, on its own or the State's motion, orders a pre-trial psychiatric examination of a defendant, we can presume there is a question about defendant's competency or mental condition. To guarantee that state and federal constitutional rights are scrupulously honored in these circumstances, we find that no waiver of these rights will be effective without advice of counsel. *Cf., State ex rel. J.M. v. Taylor*, 166 W.Va. 511, 276 S.E.2d 199 (1981) (a juvenile defendant may not waive his right to counsel, unless he does so upon advice of counsel).

■ To summarize, protection of a defendant's constitutional privilege against self-incrimination and right to assistance of counsel at pre-trial court-ordered psychiatric examinations, requires that a tape-recording of the entire interview be given to his and the government's lawyer, and an *in camera* suppression hearing be held to guarantee that the court-ordered psychiatrist's testimony will not contain any in-criminating statements made by the defendant.

### III.

■ Jackson proffered instructions that advised the jury about the further disposition of a defendant who is found not guilty by reason of insanity. This trial judge refused to permit a not guilty by reason of insanity verdict and refused an instruction about further disposition. This case was in litigation when we decided *State v. Nuckolls*, 166 W.Va. 259, 273 S.E.2d 87 (1980), and its rule applies here. *See also State v. Milam*, 159 W.Va. 691, 226 S.E.2d 433 (1976).

> In any case where the defendant relies upon the defense of insanity, the defendant is entitled to any instruction which advises the jury about the further disposition of the defendant in the event of a finding of not guilty by reason of insanity which correctly states the law ....

Syllabus Point 2, *State v. Nuckolls, supra.*

*Accord, State v. Daggett*, 167 W.Va. 411, 280 S.E.2d 545, 550 (1981).

### IV.

Dr. Sopher, our state medical examiner, testified from a report describing Weems' autopsy, and gave his opinion about the cause of death. An assistant, not Sopher, performed the autopsy.

The physician who did the autopsy returned to his native Chile and was outside the court's subpoena power.

Autopsies may be performed by members of the chief medical examiner's office, W.Va.Code, 61–12–10. His medical examiner assistants who perform autopsies are licensed physicians and responsible to him. Code, 61–12–3 and 61–12–10. Autopsy reports from the medical examiner's office shall be admissible as evidence in any court proceeding. Code, 61–12–13. *See* Annot., Official Death Certificate as Evidence of Cause of Death in Civil or Criminal Action, 21 A.L.R.3d 418 (1968 and supp.).

97 S.Ct. 149, 50 L.Ed.2d 130; *State v. Brown*, 601 S.W.2d 311, 315 (Mo.App.1980).

**9.** For those places with appropriate facilities, video-taping would be even better. *See Thorn-*

*ton v. Corcoran, supra;* Comment, The Right to Counsel During Court-Ordered Psychiatric Examinations of Criminal Defendants, 26 Villanova L.Rev. 135, 164 (1980–81).

■ Any physician qualified as an expert may render an opinion about physical and medical cause of injury or death.[10] *See generally* 31 Am.Jur.2d Expert and Opinion Evidence, § 111 *et seq.* (1967 and supp.); 40 C.J.S. Homicide § 257 (1944 and supp.); Annot., Necessity and Effect, in Homicide Prosecution, of Expert Medical Testimony as to Cause of Death, 65 A.L.R.3d 283 (1975 and supp.); Annot., Admissibility of Testimony of Coroner or Mortician as to Cause of Death in Homicide Prosecution, 71 A.L.R.3d 1265 (1976 and supp.). This opinion can be based on any facts in evidence including an autopsy report. *Accord, Giroir v. Pann's of Houma, Inc.,* La.App., 341 So.2d 1346, 1350 (1976), *reh. denied* (1977); *Tharp v. Oberhellmann,* Mo.App., 527 S.W.2d 376 (1975), *reh. denied* (1975).

We reverse because the trial court failed to instruct about the consequences to a defendant of being adjudged criminally insane. The cause is remanded to Kanawha County Circuit Court to be retried.

Reversed.

McHUGH, J., deeming himself disqualified, did not participate in the decision of this opinion.

**10.** In *State v. Clark,* 171 W.Va. 74, at 78, 297 S.E.2d 849, at page 853 (1982), we noted that a medical examiner may describe the type and nature of wounds suffered, physical and medical causes of death, tests conducted during his examination and answer properly phrased hypothetical questions based on the evidence, but he may not opine about the manner of death because that is a fact-finding function of the jury.