# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs. No. 12-0836 (Jefferson County 11-F-88)**

**Ray Dwayne Cook,**
**Defendant Below, Petitioner**

**FILED**

**February 12, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Ray Dwayne Cook, by counsel Kevin D Mills and Shawn R. McDermott, appeals an order entered by the Circuit Court of Jefferson County sentencing him to life without mercy and a consecutive sentence of one year following his convictions for first degree murder and brandishing a firearm. The State, by counsel Brandon C. H. Sims and Hassan S. Rasheed, Assistant Prosecutors from the Jefferson County Prosecuting Attorney's Office, has filed its response.

Mr. Cook raises numerous errors. This Court has considered the parties' briefs, the appendix record designated for our review, the pertinent authorities, and oral argument. We find no new or significant questions of law and, upon application of the standards for our review of the various issues raised, we find no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

On the afternoon of July 15, 2011, Mr. Ray Cook, the defendant, met his estranged girlfriend, Jenny Perrine, in the parking lot of the Southern States Store in Ranson, West Virginia. Jenny Perrine had told friends she was meeting Mr. Cook to take possession of two pet dogs that had been in his care. Mr. Cook did not bring the dogs with him to meet Ms. Perrine. Instead, Mr. Cook shot Ms. Perrine multiple times and killed her while she sat in her car in the Southern States parking lot. Following the shooting, which had been witnessed by several people, Mr. Cook called 911 and reported that he had shot Ms. Perrine and that he had not taken his medication that day.

Mr. Cook was indicted on one count of murder in the first degree and one count of brandishing a firearm. A bifurcated jury trial followed. During the guilt phase, Mr. Cook did not deny shooting Ms. Perrine, but instead presented a diminished capacity defense. He claimed his Bipolar Disorder and side effects of medication he was taking rendered him

1

incapable of forming the necessary intent of premeditation and deliberation to commit first degree murder. The jury returned a verdict of guilty on both counts. The same jury decided the mercy phase and recommended no mercy. The circuit court subsequently sentenced Mr. Cook to life without mercy for his conviction of murder in the first degree, and one year in the Eastern Regional jail for his conviction of brandishing. The two sentences were ordered to be served consecutively. It is from this order that Mr. Cook appeals.

Because Mr. Cook alleges various errors to which we apply different standards of review, we will set out the particular standard for our review of each issue, or group of similar issues, in connection with our discussion of the issue or issues.

Mr. Cook asserts several errors pertaining to the circuit court's failure to suppress evidence. This Court has previously declared that, "[o]n appeal, legal conclusions made with regard to suppression determinations are reviewed *de novo*. Factual determinations upon which these legal conclusions are based are reviewed under the clearly erroneous standard. In addition, factual findings based, at least in part, on determinations of witness credibility are accorded great deference." Syl. pt. 3, *State v. Stuart*, 192 W. Va. 428, 452 S.E.2d 886 (1994). *See also* Syl. pt. 1, *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996) ("When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error."); Syl. pt. 2, in part, *id*. ("In contrast to a review of the circuit court's factual findings, the ultimate determination as to whether a search or seizure was reasonable under the Fourth Amendment to the United States Constitution and Section 6 of Article III of the West Virginia Constitution is a question of law that is reviewed *de novo*. . . . Thus, a circuit court's denial of a motion to suppress evidence will be affirmed unless it is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake has been made.").

We begin by addressing Mr. Cook's contention that the circuit court erred in failing to suppress various statements that he alleges were elicited in violation of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), and/or his Sixth Amendment right to counsel. Mr. Cook first argues that the circuit court erroneously failed to suppress his statement to a law enforcement officer, made while the crime scene was being initially secured and Mr. Cook was being detained, regarding the location of his gun. The circuit court allowed this statement to be admitted based upon the public safety exception to *Miranda*. He next complains that the circuit court should have suppressed statements he made in the interview room of the Ranson Police Department prior to being

read his *Miranda* rights. The circuit court found that the questions Mr. Cook was asked prior to the reading of *Miranda* were not interrogation in that they could not reasonably be viewed as an attempt by the officer to elicit incriminating responses. Finally, Mr. Cook asserts that his statement "I am sorry. I screwed other people's lives up[,]" which was made while he was being booked and after he had asserted his right to counsel, should have been suppressed. The circuit court concluded that Mr. Cook's statement "was not the product of questioning by an agent of the [S]tate, and thus is voluntary."

We have reviewed the record pertaining to the various statements Mr. Cook contends were improperly admitted by the circuit court and also the relevant law pertaining thereto. We find no error in the circuit court's admission of these statements.[1] *See New York v. Quarles*, 467 U.S. 649, 657, 104 S. Ct. 2626, 2632, 81 L. Ed. 2d 550 (1984) ("We conclude that the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination."); Syl. pt. 8, in part, *State v. Guthrie*, 205 W. Va. 326, 518 S.E.2d 83 (1999) ("The special safeguards outlined in *Miranda* are not required where a suspect is simply taken into custody, but rather only where a suspect in custody is subjected to interrogation. . . ."); *State v. Kilmer,* 190 W. Va. 617, 625, 439 S.E.2d 881, 889 (1993) ("Interrogation has been defined by the United States Supreme Court as 'express questioning . . . [or] any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect.' *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S. Ct. 1682, 1689-90, 64 L. Ed. 2d 297 (1980) (footnotes omitted). Further, the 'definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response.' *Id*. at 302, 100 S. Ct. at 1690 (footnote omitted)."); *State v. Bradshaw*, 193 W. Va. 519, 528, 457 S.E.2d 456, 465 (1995) ("'an accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversation with the police.' [*Edwards v. Arizona*, 451 U.S. 477, 484-85, 101 S. Ct. 1880, 1885, 68 L. Ed. 2d 378

---

[1]Mr. Cook additionally argues that the circuit court should have suppressed statements he made while in a police cruiser when he had not been read his *Miranda* warnings. Mr. Cook claims the statements were elicited as the result of the functional equivalent of questioning. Notably, however, Mr. Cook fails to provide details regarding how the officer improperly elicited the statements. Therefore, we decline to address this argument as inadequately briefed. *See State v. White*, 228 W. Va. 530, 541 n.9, 722 S.E.2d 566, 577 n.9 (2011) ("Typically, this Court will not address issues that have not been properly briefed.").

(1981).]").

We next address Mr. Cook's challenge to the admission of evidence he claims should have been suppressed due to insufficient search warrant affidavits. Mr. Cook asserts that two separate warrants issued in this matter were based upon inadequate affidavits. Therefore, evidence seized in reliance on the warrants should have been suppressed. One affidavit was provided to obtain a warrant to search Mr. Cook's vehicle and to seize a weapon, holster and ammunition that were plainly visible. The second affidavit was offered to secure a warrant to search the contents of Mr. Cook's cellular phone.[2]

This court has held that

> [u]nder the Fourth Amendment to the United States Constitution and Article III, Section 6 of the West Virginia Constitution, the validity of an affidavit for a search warrant is to be judged by the totality of the information contained in it. Under this rule, a conclusory affidavit is not acceptable nor is an affidavit based on hearsay acceptable unless there is a substantial basis for crediting the hearsay set out in the affidavit which can include the corroborative efforts of police officers.

Syl. pt. 4, *State v. Adkins*, 176 W. Va. 613, 346 S.E.2d 762 (1986). We have reviewed the parties' representations of the information that was included in the documents presented to the magistrate court to obtain the requested search warrants[3] and we find them to have been sufficient. Therefore, the circuit court did not err in refusing to suppress the evidence seized in reliance on the challenged warrants.

---

[2]The cellular phone was already in police custody when the warrant to search its contents was sought.

[3]In seeking the warrant to search Mr. Cook's vehicle, the magistrate court was apparently presented with a form titled "Affidavit and Complaint for Search Warrant." The title of the documents submitted in relation to the phone are not identified by the parties. Furthermore, Mr. Cook has failed to provide this Court with copies of these documents in the appendix record. While this Court has not been provided with copies of the relevant documents, neither party has challenged the accuracy of the quotes therefrom provided in the briefs. Therefore, we decide this issue based upon the parties' representations of what the documents stated. In the future, counsel is advised to comply with Rule 7(d)(6) of the Rules of Appellate Procedure, which requires the petitioner to include in the Appendix "[c]opies of critical exhibits . . . ."

4

Mr. Cook also contends that the circuit court erred by failing to suppress, during the State's rebuttal case, statements that had been suppressed pursuant to *Miranda* during the State's case-in-chief. The previously suppressed statements, which were obtained during questioning that occurred after Mr. Cook had asserted his right to counsel, were used during the cross-examination of Mr. Cook's psychological expert, Dr. Lewis. The circuit court allowed the testimony for impeachment purposes. *See* Syl. pt. 3, *State v. DeGraw*, 196 W. Va. 261, 470 S.E.2d 215 (1996) ("When a defendant offers the testimony of an expert in the course of presenting a defense such as the insanity defense or the diminished capacity defense, which calls into question the defendant's mental condition at the time the crime occurred, and the expert's opinion is based, to any appreciable extent, on the defendant's statements to the expert, the State may offer in evidence a statement the defendant voluntarily gave to police, which otherwise is found to be inadmissible in the State's case-in-chief, solely for impeachment purposes either during the cross-examination of the expert or in rebuttal, even though the defendant never takes the witness stand to testify."). We have reviewed this testimony and find that the circuit court correctly allowed the statements as impeachment evidence pursuant to *State v. DeGraw.*

Mr. Cook additionally complains that the State's expert, Dr. Clayman, failed to comply with *State v. Jackson*, 171 W. Va. 329, 298 S.E.2d 866 (1982), by not recording his entire interview with Mr. Cook.[4] Therefore, Mr. Cook argues, Dr. Clayman's testimony should have been stricken or, in the alternative, Mr. Cook's statements to Dr. Clayman should have been suppressed. On this issue, the circuit court concluded that

> the breaks in the recording were inadvertent and not the part of any improper motive on the part of the state's expert. Furthermore, the breaks go to the weight the jury will give the testimony of the state's expert and do not affect its admissibility.

---

[4]In Syllabus point 2 of *State v. Jackson*, 171 W. Va. 329, 298 S.E.2d 866 (1982), this Court held:

> Protection of a defendant's constitutional privilege against self-incrimination and right to assistance of counsel at pre-trial court-ordered psychiatric examinations, requires that a tape-recording of the entire interview be given to his and the government's lawyer, and an *in camera* suppression hearing be held to guarantee that the court-ordered psychiatrist's testimony will not contain any incriminating statements.

5

Accordingly, the Court DENIES the defendant's motion to strike Dr. Clayman's testimony or to suppress the contents of the audio recording.

We find no error in the circuit court's ruling. The recording made by Dr. Clayman was approximately three and one-half hours long, and the unrecorded portions of the interview appear to amount to only five or six minutes. There has been no allegation that the gaps in the recording were intentionally created. There likewise was no attempt by the State to admit into evidence any statements, incriminating or otherwise, that were made during the unrecorded portions of the interview. Indeed, no evidence was presented to indicate that any topic of substance was discussed during the gaps in the recording. Finally, we note that the circuit court's order of May 22, 2012, expressly notes that the "Defendant and the State had reached an agreement to redact certain portions of the statement [made by the Defendant to Dr. Clayman], including references to Defendant's criminal history and prior bad acts." Under these circumstances, we find no error in the circuit court's ruling and we conclude that Mr. Cook's right to counsel and his privilege against self-incrimination were adequately protected in accordance with *State v. Jackson*.

Mr. Cook next argues that he is entitled to a new trial based upon an alleged violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). We previously have held that,

[i]n reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000). *Accord* Syl. pt. 1, *Burke-Parsons-Bowlby Corp. v. Rice*, 230 W. Va. 105, 736 S.E.2d 338 (2012). Mr. Cook complains that the State failed to disclose the existence of a bottle of Ativan pills that was located in the victim's purse until the penultimate day of trial. Mr. Cook argues that, due to the State's failure to timely disclose the Ativan pills, he should have been granted a new trial. He admits that the State was unaware of the existence of this evidence, but claims the Ativan pills were exculpatory. This Court has set out a three-part test for evaluating a *Brady* violation:

6

> [t]here are three components of a constitutional due process violation under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and *State v. Hatfield*, 169 W. Va. 191, 286 S.E.2d 402 (1982): (1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial.

Syl. pt. 2, *State v. Youngblood*, 221 W. Va. 20, 650 S.E.2d 119 (2007). Applying the foregoing test, we find no *Brady* violation. Although the State was initially unaware of the existence of the container of Ativan pills, the pills were discovered and provided to defense counsel during the trial. Defense counsel then presented evidence regarding the container of pills to the jury and the container of pills was actually entered into evidence. Under these circumstances, there simply was no *Brady* violation.

Mr. Cook also argues that the circuit court erred by failing to grant a mistrial after the State published to the jury on an overhead projector Mr. Cook's invocation of his right to counsel. We find this argument has no merit. The portion of transcript projected on the screen displayed many lines of text and included the following excerpt:

> RAY COOK: (Inaudible).
> CORPORAL NORRIS: Okay.
> RAY COOK: That's about it.
> CORPORAL NORRIS: All right.
> RAY COOK: Talk to a lawyer.
> CORPORAL NORRIS:   Okay. All right. You need some water or bathroom or anything like that?

In denying Mr. Cook's subsequent motion for a mistrial, the circuit court noted that the text was displayed inadvertently and only briefly. The circuit court further observed that the jury's attention was being directed away from the complained of text by the assistant prosecutor drawing a vivid blue circle around text at another area of the page to draw attention to the circled text. For these reasons, the circuit court concluded that the likelihood that the jury even saw the statement referring to a lawyer was slim, and, thus, Mr. Cook had not been prejudiced by the display. In fact, the circuit court itself had not noticed the complained of text. Additionally, the circuit court opted to not offer to the jury a cautionary instruction or to inquire whether they had actually seen the complained of text so as to not unnecessarily draw their attention to the same. It has been established that "[t]he decision

7

to declare a mistrial, discharge the jury, and order a new trial in a criminal case is a matter within the sound discretion of the trial court." Syl. pt. 8, *State v. Davis*, 182 W. Va. 482, 388 S.E.2d 508 (1989). We find the circuit court did not abuse its discretion in refusing to grant a mistrial based upon the foregoing facts.

Likewise, we find no merit in Mr. Cook's argument that he was entitled to a mistrial based upon a reference to Mr. Cook's incarceration made by the State's expert witness, Dr. Clayman. During his testimony, Dr. Clayman commented that "I don't know if he was shipped down from the ERJ down to South Central but we held him so he could come to our office for two days."[5] Mr. Cook argues that it was improper for the State to elicit testimony regarding his pretrial custody. In support of this argument, Mr. Cook cites *State v. Brewster*, 164 W. Va. 173, 261 S.E.2d 77 (1979), in which this Court held at Syllabus point 3, that "[a] criminal defendant has the right, absent some necessity relating to courtroom security or order, to be tried free of physical restraints." The State argues that Dr. Clayman's inadvertent reference to Mr. Cook's incarceration did not warrant a mistrial. The State compares the comment to one this court considered in *State v. Welch*, wherein a witness testified to the defendant's comment that "he was scared that--he knew he was going to have to go back to prison." 229 W. Va. 647, 654, 734 S.E.2d 194, 201 (2012). The *Welch* Court considered the comment under the plain error doctrine and found no reversible error.

Turning to the instant matter, we find that Dr. Clayman's comment was inadvertent, brief, and does not compare to the potential for prejudice that accompanies having a defendant in restraints as was the case in *Brewster*. Based upon these facts, any error that resulted from Dr. Clayman's fleeting reference to Mr. Cook's incarceration was harmless. *See* Syl. pt. 2, *State v. Atkins*, 163 W. Va. 502, 261 S.E.2d 55 (1979) ("Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury.").

Finally, Mr. Cook argues that the circuit court failed to provide him the due process required in a bifurcated mercy phase trial, as delineated in *State v. McLaughlin*, 226 W. Va. 229, 700 S.E.2d 289 (2010). Although Mr. Cook moved for a bifurcated trial, he

---

[5]The circuit court instructed the jury to not consider Mr. Cook's pretrial incarceration.

chose to not present any testimony during the mercy phase and asked the State to do the same. In other words, he desired that the parties proceed directly to argument without the production of any evidence relating to mercy. The State declined. We find no error. *See* Syl. pt. 8, *State v. McLaughlin*, 226 W. Va. 229, 700 S.E.2d 289 ("In the mercy phase of a bifurcated first degree murder proceeding, the defendant will ordinarily proceed first; however, the trial court retains the inherent authority to conduct and control the bifurcated mercy proceeding in a fair and orderly manner."). Mr. Cook's decision to present no evidence on the issue of mercy simply does not require the State to stand silent on the issue. *See* Syl. pt. 7, *id.* ("The type of evidence that is admissible in the mercy phase of a bifurcated first degree murder proceeding is much broader than the evidence admissible for purposes of determining a defendant's guilt or innocence. Admissible evidence necessarily encompasses evidence of the defendant's character, including evidence concerning the defendant's past, present and future, as well as evidence surrounding the nature of the crime committed by the defendant that warranted a jury finding the defendant guilty of first degree murder, so long as that evidence is found by the trial court to be relevant under Rule 401 of the West Virginia Rules of Evidence and not unduly prejudicial pursuant to Rule 403 of the West Virginia Rules of Evidence.").[6]

For the reasons set out above, the order of conviction and sentence entered by the Circuit Court of Jefferson County on June 19, 2012, is affirmed.

Affirmed.

---

[6]Two additional errors raised by Mr. Cook may be disposed of summarily. Mr. Cook's argument that the circuit court erred in denying his motion to require the State to present its medical and psychological evidence as to Defendant's state of mind in the State's case-in-chief, rather than in its rebuttal case, was inadequately briefed. Mr. Cook's argument on this issue is one paragraph and he provided no authority to support his position. *See State v. White*, 228 W. Va. 530, 541 n.9, 722 S.E.2d 566, 577 n.9 ("Typically, this Court will not address issues that have not been properly briefed.").

Mr. Cook additionally argues that the circuit court impermissibly shifted the burden of proof and production to the defendant by ordering that Mr. Cook's case in surrebuttal would be limited to one witness and would be only for the purpose of entering the victim's purse into evidence. We find no merit to this argument, particularly when, as the State notes, the jury was thoroughly instructed that the State had the burden of proof.

**ISSUED:** February 12, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II