# CHARLESTON.

## STATE *v.* ANDREW BRADY

### (No. 5861)

Submitted November 15, 1927.   Decided November 29, 1927.

1.  CRIMINAL LAW—*On Conflicting Affidavits, Existence of Prejudice Calling for Change of Venue is Question for Trial Judge.*

    Where the affidavits setting up facts and circumstances in support of an application for change of venue are met with affidavits stating facts and circumstances denying the existence of a feeling or prejudice against the prisoner among the people of the jurisdiction, at the time of trial, as would prevent him from obtaining a fair and impartial trial, the question thus presented by the conflicting affidavits is one of fact to be passed on by the trial judge.   (p. 528.)

    (Criminal Law, 17 C. J. § 3597.)

2.  SAME—*Ruling on Application for Change of Venue is Not Subject to Review on Appeal, Except for Abuse of Power.*

    The judgment of the trial court on such question is not subject to revision by the appellate court, except in cases of abuse of its power.   (p. 529.)

    (Criminal Law, 17 C. J. § 3577.)

3.  SAME—*Before Admitting Confession, Trial Court Must Determine Whether it Was Voluntary, or Under Inducement by One in Authority, of Benefit or of Mitigation of Punishment; State Has Burden to Show to Trial Court's Satisfaction That Confession Should Be Admitted.*

    It devolves upon the trial court in the first instance, before admitting it, to determine from evidence whether a confession of guilt has been freely and voluntarily made, and not under duress or threats or by some inducement made or held out to the accused by someone in authority, of benefit or reward of a worldly or temporal character, or in mitigation of punishment; and the burden is upon the State to show to the satisfaction of the court facts justifying the admission of such confession.   (p. 529.)

    (Criminal Law, 16 C. J. § § 1468, 1509, 1513.)

4.  SAME—*Weight Which Should be Given Confession, in Connection With All Other Evidence, is Jury Question.*

    Upon the admission of such confession the jury becomes

the final judge of the weight and effect that should be given it in connection with all other evidence in the case as to the guilt or innocence of the defendant.   (p. 530.)

(Criminal Law, 16 C. J. § 2287.)

5.   SAME—*That Confession is Made to Public Officer and in Answer to Questions Will Not Render It Inadmissible, if Voluntarily Made, Without Threats, Intimidation, Promises of Reward, or Immunity From Punishment.*

The fact that a confession has been made to a public officer, such as a sheriff or prosecuting attorney, will not render it inadmissible, provided it has been freely and voluntarily made, though in response to questions, if made without any threats or intimidation or promises of reward or immunity from punishment for the crime.   (p. 530.)

(Criminal Law, 16 C. J. § 1474.)

6.   SAME—*Witness Qualified by Practical Experience in Field Giving Him Special Knowledge May Testify as Expert; One Engaged for Reasonable Time in Particular Profession Will Be Assumed to Have Ordinary Knowledge Common to Persons so Engaged, in Passing on His Qualifications as Expert Witness.*

A witness may testify as an expert, where he is qualified by practical experience in a field of activity conferring on him special knowledge, not shared by mankind in general; the rule in this respect being that one who has been engaged for a reasonable time in a particular profession, will be assumed to have the ordinary knowledge common to persons so engaged.   (p. 531.)

(Criminal Law, 16 C. J. § 1532.)

7.   SAME—*Question of Witness' Qualifications as Expert Through Practical Experience is Largely in Trial Court's Discretion, and Its Judgment Will Not be Reversed, Except on Clear Showing of Error.*

The question of such witness' qualification to speak as an expert lies largely in the discretion of the trial court, whose judgment will not be reversed unless it clearly appears that the witness is not qualified.   (p. 532.)

(Criminal Law, 16 C. J. § 1532; 17 C. J. § 3582.)

8.   RAPE—*To Constitute Rape, Male Genital Organ Must Penetrate Female Genital Organ, But Any Penetration of Labia or External Lips of Female's Vulva, Known as "Vulva Penetration" is Sufficient; Hymen Need Not be Ruptured to Sustain Conviction for Rape.*

To constitute the crime of rape, there must be some degree

104 W. Va.

of penetration of the female genital organ by the male genital organ, but any penetration, however slight, of the labia or external lips of the vulva of the female is all that is necessary. The hymen need not be ruptured to sustain a conviction for rape. (p. 533.)

(Rape, 33 Cyc. p. 1422.)

9. CRIMINAL LAW—*Instructions Must be Considered as Whole; if One Instruction Fully Covering Principle of Law Applicable to Case is Given, Refusal of Other Instructions to Same Effect, Differently Expressed, is Not Error.*

As we have held many times, instructions must be considered together as a whole, and if one instruction has been given fully covering a principle of law applicable to the case, it is not error to refuse other instructions to the same effect, although differently expressed. (p. 534.)

(Criminal Law, 16 C. J. § § 2493, 2506.)

10. RAPE—*Evidence Held to Sustain Conviction of Rape.*

A case where the facts and circumstances sustain the verdict of guilty of rape. (p. 535.)

(Rape, 33 Cyc. p. 1486.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of Syllabi.)

Error to Circuit Court, Hardy County.

Andrew Brady was convicted of rape, and he brings error.

*Affirmed.*

*Kuykendall & Thompson,* for plaintiff in error.

*Howard B. Lee,* Attorney General, and *R. A. Blessing,* Assistant Attorney General, for the State.

WOODS, JUDGE:

Andrew Brady was convicted by a jury in the circuit court of Hardy county of rape. Judgment of death was pronounced upon him by the court, and from that judgment he prosecutes a writ of error.

The evidence of the state shows that the defendant went to the home of Seymour Huffman, about a mile above the town of Petersburg, a little before 11 o'clock, on Sunday morning, August 15, 1926, asked for a cup of water of the seventeen

year old white girl (the prosecutrix here), who was living in said home as a domestic, and further asked if Mr. Huffman wanted to hire a man to work for him. He said his name was Riffy. The Huffman family had gone to Burlington to attend a camp meeting, and the domestic was the only person left in the home. While getting the cup of water for him, he grabbed her, threw her on a table, and by force committed a rape upon her person. The details of his action in this respect will be adverted to later in this opinion. The defendant ran from the house. Whereupon the girl ran out into the yard, and called a neighbor, who lived close by, to come over, as something awful had happened. The neighbor states that in response to the girl's call, she went to her and found her crying and leaning against the fence, and that it was sometime before she was able to tell her what had happened. Examination revealed marks on her neck, arm, back, and stomach. She had seen the defendant once before, and was able to identify him at the preliminary hearing as the man who had made the attack upon her. Moab Simmons saw defendant at about eleven o'clock that morning at the railroad tracks, about ten or fifteen steps from the Huffman home. Defendant went through the gate that led to the Huffman house. Gilbert Bean saw him about the same time about one hundred to one hundred and fifty feet from the same house. John Brill saw him going toward the Huffman house, at which time he was as near the house as the distance across the court room. He was going toward the back of the house. Shortly afterward this same witness saw the girl coming off the porch out through the gate toward his house, and calling for his wife to come over right quick. His wife responded to the call as we have already shown. A confession of the defendant was admitted in evidence of the following purport and effect: "I went up to Seymour Huffman's on Sunday, August 15, 1926, between 11 and 12 o'clock. I went into the house, and the girl was there. I pushed her over on the table, pulled her legs apart and pulled her bloomers down. When I took hold of her she began to kick, struggle and scream. I then choked her and after a few minutes wrestling and struggling with her I succeeded in forcing my private

into her.  She continued to struggle and scream and I became
scared and ran.  I was out looking for some girl, had been
drinking a little that day, had my passions excited and
thought this was as good a place as any to have that excite-
ment relieved.  She never consented, but by choking her I
managed to force her.  The foregoing statement and confes-
sion have been read to me, and I certify that they are correct
in every detail.''  The defendant signed by mark before wit-
nesses.  The prisoner remarked upon executing it:  ''I want
to sign it because it is the truth.''

The defendant by his evidence seeks to establish an alibi.
He denies being at Huffman's house at the time the offense
was committed, as fixed by the state's evidence.  He admits
drinking some the night before.  He got up at half past six
on Sunday morning.  He went to the tannery (where he had
been working during the preceding week) and stayed until
between eight and nine o'clock, after which he went down
to Hinkle's Addition and had a little ''old hen''.  He and a
man named Slick Ford left the tannery in a Ford automobile
owned by the latter.  They drove to where Slick lived and
left the car.  From there he walked to Cleal Riggleman's
home.  Dick Taylor was with him.  On being asked what
business he had there, he replied, ''None''.  From there he
came up the railroad track toward Huffman's.  The railroad
track runs through the Huffman place.  Then he went home.
On being asked what time he got there, he replied, ''About
eleven o'clock, I guess.''  He then went to a near neighbor's
to get his hair cut, and while there Brill, the state's witness,
came and asked him if he had been up around Mr. Huffman's
that morning, and defendant replied:  ''No, sir, what was
going on?''  Defendant denies making the confession, that
it was read to him, or that he made his mark thereto.  Dick
Taylor saw defendant at a colored church about eight o'clock;
was with the defendant in the morning when they parted on
the railroad track at nine-thirty; and did not see defendant
again until three o'clock in the afternoon.  Slick Ford saw
the defendant at the tannery; last saw him at nine o'clock
that Sunday morning; did not see him again until four o'clock
in the afternoon.  Paul Williams cut defendant's hair along

about twelve o'clock. Cleal Riggleman said defendant was at his house on Sunday morning about eight o'clock. He was at the home of Phoebe Taylor Method about eight-thirty Sunday morning. Stella Hardy says that he was at their home about eleven o'clock and asked for a drink of water.

The several assignments of error go to (1) the court's refusal of a change of venue; (2) the admission and exclusion of evidence; and (3) the giving and refusing of instructions.

The petition for change of venue was supported by affidavits of six citizens. The grounds set out therein were to the effect that defendant is a colored man, charged with an assault upon a white girl; that he was sent to the jail at Keyser because of fear of mob violence; that the presiding judge of the circuit, because the feeling was so great against the defendant, took precaution to have the sheriff summon officers as a means of protection from any demonstration of mob violence; and that the feeling in Hardy county towards defendant was very indignant. In none of these supporting affidavits is there a belief expressed that the defendant could not get a fair trial in Hardy county. The State countered this motion with affidavits of thirteen citizens of the county. These in effect stated that while at the time the act was committed because of its nature and serious character, there was considerable indignation expressed by some of the citizens in the immediate community that such an act should have been perpetrated; that at no time, however, was there any disposition or any sign of an attempt on the part of any one to take the law into their own hands; that whatever excitement was visible at the time of the commission of the offense caused by its unusual character and the incident attending it has since entirely subsided; that there were only thirty-five or forty people present at the preliminary hearing, many of them being boys, and that the assembly was orderly and quiet; that such hearing was conducted properly and according to law; that the persons present made no demonstrations or gave any evidence of any bias or prejudice against the prisoner, nor did aught else than to let the law take its orderly course; that the

prisoner was not removed from the county for fear of mob violence, but that the reason of the removal was that the Hardy county jail was an old one from which escape could be expected; that two officers delivered the prisoner without incident to the jail at Keyser. All these affiants are men of affairs and testify that there is no prejudice existing against the defendant, and that they did not know of any facts, circumstances or reasons that would prevent a fair trial in that county. The *voir dire* of the jurors called and selected is not in the record, so the presumption is that there was no room for complaint in that direction. While many of the authorities hold that the obtaining of a competent jury is conclusive against the prisoner upon a motion for change of venue, such is not the law in this State. It is a cogent fact, however, to be considered. *State* v. *Flaherty,* 42 W. Va. 240. It is well settled by our decisions that facts and circumstances must appear in the affidavits for such change from which the conclusion may be deduced that a fair trial cannot be had. *State* v. *Douglass,* 41 W. Va. 537; *Wormeley's Case,* 10 Gratt. 658. It is also the general rule that the granting of such change is discretionary with the court and subject to revision only in cases of abuse. *State* v. *Sheppard,* 49 W. Va. 582. Applying the principles and rules just referred to, we would not be warranted in reversing the judgment of the trial court. There were no real manifestations of a spirit of violence toward the prisoner shown. The record made on this question fails to show the existence of such feeling or prejudice against the prisoner, at the time he was tried, as could have endangered a fair and impartial trial.

In very early times a confession, no matter how obtained, was evidence against the person making it that he committed the crime confessed. But it became evident in course of time that persons under the influence of hope of benefit, or fear induced by violence or threats of violence, confessed to alleged crimes which had never been committed or which had been committed by other persons, and this led the courts to receive confessions with caution, especially where they were not in writing. Out of this caution was evolved the rule which now

obtains in this State, that a confession of a person accused
of crime is inadmissible in evidence if not freely and volun-
tarily made, and not under duress or threats or by some in-
ducement made or held out to the accused, by some one in
authority, of benefit of a worldly or temporal character, or in
mitigation of punishment. *State* v. *Richards*, 101 W. Va.
136. It devolves upon the trial court in the first instance,
before admitting it, to determine whether the proffered con-
fession comes within the rule just stated. The State bears
the burden of showing facts to the satisfaction of the court
justifying its admission. The evidence as to the admissibility
of the confession in this case was heard by the court in the
absence of the jury.

It appears that the preliminary examination before the
justice was had on Monday, the day after the commission of
the alleged offense. After the defendant was lodged in jail
in Keyser, word was somehow conveyed to the officers that the
defendant wanted to make a confession. The prosecuting
attorney of Mineral county, the prosecuting attorney of
Hardy county, A. W. Mathias, deputy sheriff of Hardy
county, and James Welton were present at the time of the
confession. The prosecuting attorney of Mineral county
wrote down in substance the confession of the defendant.
The defendant made his mark to the confession after it was
read to him. All united in saying that no inducements were
held out to him, no threats made to him, or offer of benefit
of any character or in mitigation of punishment; that in
fact it was freely and voluntarily made. After the confes-
sion was reduced to writing and read over to him, he was
told by one of the number present that he did not have to
sign that paper unless he wanted to, and the defendant re-
plied: "I want to sign it because it is the truth." Thus
we see the State met the burden cast upon it by our decisions.
The fact that this confession was made to certain officers, does
not of itself render it inadmissible. *State* v. *Goldizen*, 93 W.
Va. 328.

The prisoner denied having made any statement what-
ever. He denied that it was read to him, or that he
signed it. On being asked if he talked to any one, he stated
that one of them "got to asking me some stuff, and I told him

and he said it was not so." The rule is stated in 16 C. J. 720 that: "A confession is not rendered inadmissible by the fact that it was elicited by questions put by public officers or others, even though the questions assumed the prisoner's guilt and although they were roughly asked; but the fact of interrogation may be taken into consideration in determing whether or not the confession was voluntarily made."

The inconsistency of these two positons of the prisoner regarding the confession is apparent. The real question in every case as to whether or not a confession is admissible is whether or not the confessing mind was influenced in any way to create a doubt as to the truth of the confession; and over this doubt or question the trial court has a wide discretion, and this discretion will not ordinarily be disturbed on review. We cannot disturb its finding here. All the facts and circumstances under which the confession was made, as well as the confession itself, went to the jury in evidence, with the instruction from the court that they were the final judges of the weight and effect that should be given to it, viewed in connection with all the other evidence in the case, on the question of the guilt or innocence of the defendant.

Another assignment of error is that the trial court refused to permit to go to the jury in evidence a confession purporting to have been made by the prisoner to an officer in charge of him, while the latter was being conveyed to the jail in Keyser on the evening of the preliminary hearing. (This was prior to the time that the confession admitted in evidence was made.) In this, after stating that he went to the Huffman house with one Dick Taylor to get a job, said: "She [the prosecutrix] was siting by a little table, I went over and took hold of her, she got up and I pushed her over on the table and I pulled her legs apart and took up her dress. She wore bloomers and I pulled them down. I had it in her and I got myself started. Dick Taylor was not in the house. He saw me start in on the girl and then he ran." The only place this purported confession is found in the record is in connection with the testimony of the defendant and the cross-examination of the officer who wrote it down, before the trial judge on the hearing as to the admissibility of the con-

fession afterward admitted in evidence. It was not proffered by defendant in evidence to the jury, and hence there is no adverse ruling of the court thereon. Then, it was entirely inconsistent with the prisoner's defense—an alibi. But, as we have said, in the state of the record, there is no question raised for us to consider.

The defendant complains of the court's action in refusing to exclude the testimony of Dr. O. B. Brooks, Dr. R. W. Dailey and H. L. Gamble, introduced by the State in the nature of expert testimony, on the ground that such witnesses had not qualified to speak as experts. Testimony had been introduced previously by physicians as to the condition of the prosecutrix immediately after the assault. This testimony, put in evidence without objection, had been to the effect that her neck and upper part of her chest was red and swollen. This condition extended to her shoulder and hips. The lips of the vulva were very red, angry red, and swollen on the outside, while on the inside it was so tender that it was difficult to make the examination without producing great pain. This, say the physicians, indicated that there had been a good deal of force used. This abnormal condition extended about one and a half to two inches into the person. Spermatozoa from the male was found on the clitoris of the female. The clitoris is at the junction of the smaller lips but inside of the external lips of the female organ. While the hymen was not ruptured, there had been a penetration by the male organ into the external lips—known as a vulva penetration. The foregoing facts were assumed as the basis of hypothetical questions propounded to the physicians, there being evidence tending to prove such facts. It was shown that Dr. Brooks was a graduate of the Baltimore Medical College, and had practiced his profession for fifteen years. Dr. Dailey was a physician of ten year's experience in the general practice. Dr. Gamble testified that he was a physician and had been actively practicing as such for four years. The rule seems to be that an expert need not have all the knowledge possible for one in his class, to entitle him to speak, but may testify unless it clearly appears that he is not qualified at all. *Richmond Locomotive Works* v. *Ford*,

94 Va. 627. The question of his qualification to speak as an expert lies largely in the discretion of the trial court, whose judgment will not be reversed unless it clearly appears that the witness is not qualified. *Savage* v. *Bowen,* 103 Va. 540; *Lane Bros.* v. *Bauserman,* 103 Va. 146. The only possible ground of objection to the two last named physicians must have been that they were not shown to have been graduates of a reputable medical college. These witnesses, however, were qualifid by practical experience in a field of activity conferring on them special knowledge not shared by mankind in general, the rule in this respect being that one who has been engaged for a reasonable time in a particular.profession, will be assumed to have the ordinary knowledge common to persons so engaged. *Commonwealth* v. *Livingston,* 14 Gratt. 592. In the last mentioned case the court remarked in its opinion that the objection to the physician there, so far as founded on the supposed absence of proof of his being an expert, must have proceeded from a mistake—inasmuch as it appeared in the record that he was proven to be a practicing physician in the City of Richmond. This evidence, in the absence of any conflicting proof, was held in that case to be sufficient to justify the trial court in overruling the objection. This calls for a like ruling here.

While the counsel for defendant lodged a general objection to each of the instructions given by the court at the request of the State, no specific grounds as a basis for such objection are set out. A careful examination of them leads us to conclude that they are free from just exception. Those relative to the substantive elements of the crime charged told the jury (1) if they found from the evidence beyond a reasonable doubt that the defendant had actual carnal connection with the prosecutrix as charged in the indictment; that said prosecutrix was not then and there the wife of the defendant; that such connection and carnal knowledge was against her will, and that it was accomplished by force, they should convict; also, (2) that to constitute the crime of rape there must be some degree of penetration of the female genital organ by the male genital organ, but any penetration, however slight of the labia of the pedenum of the female is all that is necessary.

22 R. C. L., p. 1178; *Kenney* v. *State* (Tex.) 79 S. W. 817, 65 L. R. A. 316; *Bailey* v. *Commonwealth,* 82 Va. 107.

The prisoner's rights were carefully guarded by the Court in the giving of instructions. These instructions were as follows: (1) "The court instructs the jury that the defendant, Jack Brady, is presumed to be innocent of the crime charged against him, and that this presumption follows him throughout every stage of the trial, and the burden is upon the State to prove, beyond all reasonable doubt, every material allegation of the indictment, by clear and convincing testimony, and that if the State fails to prove every such material allegation, then they shall find the defendant not guilty." (2) "The court instructs the jury that a reasonable doubt is such a doubt as exists, or would exist, in the mind of an ordinary prudent man as to cause him to hesitate to act in his own most important affairs." (3) "The court instructs the jury that in arriving at their verdict they cannot and shall not permit themselves to be influenced by the fact that the defendant is a colored man and the prosecutrix a white woman." (4) "The court instructs the jury that to constitute the crime of rape, if it be upon a woman capable, in the eyes of the law, of consenting to sexual intercourse, the act must be committed by force and against her will, and that the commission of said act must be resisted by the woman, and that the force and resistance by the woman must be more than mere verbal expressions, but there must be the exercise of every means of faculty within the woman's power to resist penetration, under the circumstances, and that the persistence in such resistance must continue until such offense is consummated, and if the jury believe, from the evidence in this case, that the prosecutrix, even though they may believe that Andrew Brady was the person who actually made the alleged assault, did not make such resistance as herein described and explained, then they cannot find the defendant guilty." (5) "The court instructs the jury that if they believe from the evidence, that any witness in this case has wilfully and knowingly testified falsely as to any material matter in issue, then they are at liberty to disregard the whole testimony of such witness, or give it such

weight as they may think it entitled to." (6) "The court instructs the jury that they may find either of the following verdicts as they may believe the law and evidence warrants: 1. We, the jury, find the defendant, Andrew Brady, guilty as charged in the indictment. 2. We, the jury, find the defendant, Andrew Brady, guilty as charged in the indictment, with a recommendation for mercy. 3. We, the jury, find the defendant guilty of an assault with intent to commit rape. 4. We, the jury, find the defendant, Andrew Brady, guilty of an assault and battery. 5. We, the jury, find the defendant not guilty." (7) "The court instructs the jury that if, after due consideration of the evidence and consultation with his fellows, he has a reasonable doubt as to the guilt of the accused in this case, it is his duty not to surrender his own convictions, simply because other jurors are of a different opinion." Eight instructions offered by the defendant were refused. Where they state correct propositions of law, we find that they were substantially embraced in the instructions given for the prisoner. We see no error in the action of the court in refusing them.

No other point is made for reversal. We have read the record carefully, and are constrained to say that it is apparent that the prisoner's rights were at all stages of the trial carefully protected by the court, and that the record is free from anything in the way of substantial error. We have no discretion but to affirm the judgment of the lower court, and direct it to at once take steps to have its sentence carried into execution as directed by law.

*Affirmed.*