376 S.E.2d 127

**STATE of West Virginia**

v.

**Danny BAKER.**

**No. 18021.**

Supreme Court of Appeals of West Virginia.

Nov. 30, 1988.

---

David C. Smith, Johnston, Holroyd & Gibson, Princeton, for Baker.

Charles G. Brown, III, Atty. Gen., Charleston, for State.

NEELY, Justice:

Appellant, Danny Baker, was convicted on 17 September 1986, of the first degree

murder of his neighbor, Jack Goad. Appellant, then 18 years old, lived with his mother and her housemate, Gladys McGrady, who were at home drinking wine with the victim on the night of 23 March 1986. The victim asked appellant to help him home; the appellant agreed and they left the house together. A neighbor, George McGrady, testified that the following day, appellant came to his house, told him that he had killed Mr. Goad with an ax the night before, and that the victim's body was in some nearby pine trees. The body was found, the police summoned, and the appellant subsequently was arrested and charged with the murder.

The investigating officer arrived, was shown the body, and then approached appellant's mother and Ms. McGrady who were in the yard of their house.[1] He asked the ladies where they kept their axes for chopping wood and one said that she would show him. She walked him around the corner of the house, pointed out the ax in the back yard, and, with the ladies' permission, the officer seized the ax as evidence. Also at that time, and with the ladies' permission, the officer seized a green shirt that was lying on top of a washing machine outside the house. The victim's blood was found on the ax and the shirt, identified as the shirt worn by appellant the night of the murder. Ms. McGrady told the officer that he could enter the house, which he did, seizing several articles of appellant's clothing. Additional evidence was found in the nearby woods and around the house.

The defense made pre-trial motions for the suppression of the physical evidence seized at the Baker house and for a change of venue. The trial court ruled against appellant on both motions, and also found appellant competent to stand trial.

At trial, appellant denied committing the murder and pled not guilty by reason of insanity. Defense counsel called several witnesses, both expert and lay, to testify in support of appellant's insanity plea. One witness, Kathy Zandusky, was a counselor at the Salem Industrial School who possessed a bachelor's degree in criminal jus-

tice. She observed appellant while he was incarcerated in the school for a month during the summer before the murder. The court refused to qualify her as an expert, but allowed her to testify as a lay witness.

A psychologist testified for the defense and the state called their own psychologist. Neither of these psychologists formed an opinion regarding appellant's criminal responsibility because the appellant would not discuss any of the circumstances of the crime. The trial court allowed the prosecutor to question these psychologists regarding appellant's refusal to speak. Appellant took the stand and testified that he did not kill the victim, but appellant admitted being mad at Mr. Goad and hitting him in the head with a hammer handle the night of his death. The court also allowed the prosecutor to cross-examine appellant concerning his refusal to speak with the psychologists.

Appellant asserts seven assignments of error: (1) denial of his motion for a change of venue; (2) denial of his motion to suppress evidence seized at the Baker house; (3) refusal to recognize Ms. Zandusky as an expert witness; (4) allowance of his confession to his neighbor into evidence; (5) allowance of the prosecutor to question witnesses and appellant about appellant's pretrial silence; (6) failure to direct a verdict of acquittal; and (7) failure to give approximately thirty defense instructions offered by defense counsel. We find no merit to any of these assignments.

## CHANGE OF VENUE

■ Appellant assigns as error the trial court's denial of his motion to change venue. In support of his motion, appellant produced three affidavits from local residents stating the affiants did not believe appellant could get a fair trial because too many people in the community were talking about the murder. In addition, appellant produced tapes of the television coverage of the crime and clippings of newspaper articles; he argues the media coverage, notoriety and heinousness of the crime

---

1.  The investigating officer and these ladies were   well acquainted with each other.

made it impossible for him to receive a fair trial in Mercer County.

This Court has repeatedly held that:

"[w]idespread publicity, of itself, does not require change of venue, and neither does proof that prejudice exists against an accused, unless it appears that the prejudice against him is so great that he cannot get a fair trial."

Syllabus Point 2, *State v. Young,* 173 W.Va. 1, 311 S.E.2d 118 (1983).

We have also held that:

"[w]hether the showing made by the defendant is sufficient to warrant a change of venue normally rests in the sound discretion of the trial court, and its ruling thereon will not be disturbed unless it clearly appears that such discretion has been abused."

*State v. Young, supra,* 173 W.Va. at 10, 311 S.E.2d at 127, and authorities cited therein.

The trial court allowed extensive individual *voir dire* of the jury panel. Of 27 potential jurors, only three indicated that they recalled this was an ax murder. We cannot say that the trial court abused his discretion by denying appellant's motion for a change of venue.

## MOTION TO SUPPRESS

■ Appellant also assigns as error the trial court's denial of his motion to suppress the ax and shirt seized outside the Baker residence, and items of appellant's clothing seized from inside the house. The evidence before us demonstrates that the search, both inside and outside the house, was consented to.

Gladys McGrady, who had lived with appellant and his mother for years, and who had an interest in the property,[2] actively consented to the search and seizure of the disputed items, and Aretta Baker, appellant's mother, also consented to at least part of the search. The trial court held an extensive suppression hearing and we do not find any evidence in the record justifying the conclusion that the court's denial of appellant's motion to suppress was error.

## EXPERT WITNESS

■ Appellant argues that the trial court erred by refusing to allow Kathy Zandusky to testify as an expert witness in counseling. Ms. Zandusky testified that she had a bachelor's degree in criminal justice and had taken four or five psychology courses while obtaining that degree. Ms. Zandusky worked at the Salem Industrial Home for Youth where she administered tests to children in her unit. She scores these tests and generally prepares the children for their subsequent interviews with the school psychologist.

The state objected to the witness's testifying as an expert, and the court sustained the state's objection. Appellant cites *State v. Brady,* 104 W.Va. 523, 140 S.E. 546 (1927), and argues that "[a] person may be qualified to testify as an expert either by study without practice or by practice without study." In *Brady,* a prosecution for rape, the trial court allowed three doctors to testify as experts for the state. The defendant objected because two of the doctors were not graduates of reputable medical colleges, although they had been practicing physicians for ten years and four years, respectively. This Court pointed out that:

These witnesses, however, were qualified by practical experience in a field of activity conferring on them special knowledge not shared by mankind in general, the rule in this respect being that one who has been engaged for a reasonable time in a particular profession, will be assumed to have the ordinary knowledge common to persons so engaged.

104 W.Va. at 533, 140 S.E. at 550. Upholding the trial court's ruling allowing these doctors to testify as experts, we pointed out that the question of a witness's qualification to speak as an expert is in the discretion of the trial court, whose decision will

---

2. Mrs. Baker, appellant's mother, testified at the suppression hearing that Ms. McGrady held joint title with her to the house. Ms. McGrady said she did not know whether her name was on the deed or not.

not be reversed unless it is clearly wrong. *Id.*

In the case before us, when appellant objected to Ms. Zandusky's qualifications, the trial court questioned defense counsel as follows:

"THE COURT: Counsel, as I understand you want to get in through her these records from the Industrial Home for Youth and history that she obtained regarding Mr. Baker; is that correct?

"MR. SMITH: Yes, sir.

"THE COURT: And a lay opinion as to his mental competency?

"MR. SMITH: Yes, Sir.

"THE COURT: I will allow that."

Ms. Zandusky was allowed to testify fully. She read excerpts from reports including the opinions of two psychologists, and was allowed to give her own evaluation of appellant. Under the circumstances, we do not believe the trial court abused his discretion by refusing to allow Ms. Zandusky to testify as an expert.

## STATEMENTS OF GEORGE MCGRADY

■ Appellant asserts that the trial court committed reversible error because he did not conduct an *in camera* hearing to determine the voluntariness of defendant's spontaneous confession to his neighbor the day after the murder. In *State v. Sanders*, 161 W.Va. 399, 242 S.E.2d 554 (1978), we held that it was error for the trial court to refuse defendant's request for such an *in camera* hearing when the only defense offered was insanity.[3] However, in the case before us, the appellant never requested such a hearing and never objected to the admission of the confession at trial. The court conducted a pre-trial hearing to determine appellant's competency to stand trial and a hearing on appellant's motion to suppress physical evidence. There was every

opportunity for appellant to request a hearing to determine the voluntariness of his confession, yet he failed to do so.

Furthermore, we note that the confession was offered spontaneously by appellant to his neighbor; there was no element of compulsion to prompt the confession. We held in Syllabus Point 1 of *State v. Johnson*, 159 W.Va. 682, 226 S.E.2d 442 (1976) that:

"A spontaneous statement by a defendant made prior to any action by a police officer or before an accusation, arrest or any custodial interrogation is made or undertaken by the police may be admitted into evidence without the voluntariness thereof first having been determined in an *in camera* hearing."

Although this spontaneous statement rule should be narrowly construed, *see Mohn, supra*, 168 W.Va. at 216–18, 283 S.E.2d at 917, particularly when the statement is made by a defendant whose sanity is in question, we find that the rule applies in this case because defense counsel did not object to the confession nor request a voluntariness hearing.

### FIFTH AMENDMENT

Appellant contends that the trial court committed reversible error in permitting the prosecutor to question the defendant, a defense psychologist and the state's psychologist, regarding appellant's refusal to discuss any of the circumstances surrounding the crime with the psychologists. Appellant argues that the questioning allowed by the court violated his constitutional right against self-incrimination.

While cross-examining Mr. Brezinski, the defense psychologist, the prosecutor brought out the fact that Mr. Brezinski was unable to form an opinion concerning

---

3. In *State v. Milam*, 163 W.Va. 752, 260 S.E.2d 295 (1979), we held that when the state surprised defense counsel at trial with a recently discovered confession given to police by the mentally-ill defendant, it was error to refuse defense counsel's request for the opportunity to present psychiatric evidence at the *in camera* hearing on the voluntariness of the confession. As in *Sanders*, defense counsel in *Milam* requested the hearing. We also note the case of *State ex rel. White v. Mohn*, 168 W.Va. 211, 283 S.E.2d 914 (1981) where we overruled Syllabus

Point 1 of *State v. Fortner*, 150 W.Va. 571, 148 S.E.2d 669 (1966) stating that the failure to hold an *in camera* hearing on the voluntariness of a confession constitutes reversible error. Instead, when it appears that a confession may not have been voluntary, the appellate court may remand the case for such an *in camera* hearing. However, in *Mohn*, we did not find it necessary to remand the case for such a hearing because it was clear from the record before us that the confession in that case was spontaneous. 168 W.Va. at 216–18, 283 S.E.2d at 917.

the appellant's criminal responsibility because the appellant would not discuss any circumstances surrounding the crime. The prosecutor then asked Mr. Brezinski whether this did not suggest that "... he was smart enough not to want to give any information about this murder." Appellant's objection was overruled and Mr. Brezinski replied it could either mean what the prosecutor suggested, or it could mean that appellant was paranoid.

On cross-examination, the prosecutor asked appellant whether he had refused to discuss the case with any of the doctors he saw and appellant admitted this was true. Defense counsel did not object to this questioning. When the state presented its case on rebuttal, the prosecutor called the court-ordered psychologist, Steve Ferris, who had earlier testified that he believed appellant was competent to stand trial. Mr. Ferris testified that he was not able to form an opinion regarding appellant's criminal responsibility because appellant was unwilling to discuss any of the circumstances surrounding the crime. Mr. Ferris said that appellant told him his lawyers did not want him to discuss the crime. He also said that appellant told him that he liked his lawyers and thought they would "try to get him off." Again, defense counsel failed to object to the questioning. Appellant now claims all three incidents of calling into question appellant's refusal to speak with psychologists violated his right to remain silent and not incriminate himself.

■ In support of his argument, appellant relies primarily on *State v. Jackson*, 171 W.Va. 329, 298 S.E.2d 866 (1982). In *Jackson*, we overturned a murder conviction because the trial court refused defendant's instruction detailing the consequences of an insanity verdict. We also stated that a court-ordered examination by a psychiatrist to assess an insanity defense is a custodial interrogation which invokes defendant's right against self-incrimination. However, as an alternative to giving defendant *Miranda* warnings in such a situation, we said that the court could hold an *in camera* hearing to excise any incrimina-

ting remarks by defendant during the interview. We further stated:

> A psychiatrist can testify to the bases of his medical opinion, *State v. Rhodes*, [166] W.Va. [402], 274 S.E.2d 920 (1981), but without reference to a defendant's specific statements about his criminal offense ... A defendant who pleads insanity does not have the privilege to "remain silent" as *Miranda* warnings advise. His refusal to be examined—an event that necessarily involves talk—may result in sanctions such as preventing him from submitting his own medical evidence of insanity.

171 W.Va. at 334–35, 298 S.E.2d at 871.

Rule 12.2(c) of the *W.Va.R.Crim.P.* also provides that statements of a defendant to a court-ordered psychiatrist are admissible only on "an issue respecting mental condition on which the defendant has introduced testimony."

Recently, in *Marano v. Holland*, 179 W.Va. 156, 366 S.E.2d 117 (1988), we overturned the murder conviction of a defendant who asserted an insanity defense. We found that the trial court's order that the defense psychologist turn over to the state's psychologist papers given him by defendant violated defendant's fourth amendment right by compelling production of his private papers. However, we rejected defendant's fifth amendment claim in *Marano*, relying on two U.S. Supreme Court cases: *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), and *Buchanan v. Kentucky*, 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987). We held that a defendant's statements to his own psychologist are voluntary, and that the statements made by defendant in *Marano* were not incriminating, but rather used to rebut defendant's claim of insanity.

In *Estelle v. Smith, supra*, the defendant in a capital murder case was ordered by the court, on its own motion and without notice to defense counsel, to undergo a psychiatric examination of his competency to stand trial. After defendant's conviction, at his sentencing hearing, the court allowed the state to call the court appointed psychiatrist who testified that defendant

was a severe sociopath and very dangerous, and defendant was sentenced to death. The U.S. Supreme Court held that the fifth amendment applies to sentencing hearings and that under the "distinct circumstances" of that case, defendant's fifth amendment privilege was violated.[4] The court pointed out that the defendant in *Estelle* neither initiated a psychiatric evaluation nor sought to introduce any psychiatric evidence. The court expressly distinguished such a case, stating:

> Nor was the interview analogous to a sanity examination occasioned by a defendant's plea of not guilty by reason of insanity at the time of his offense. When a defendant asserts the insanity defense and introduces supporting psychiatric testimony, his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he interjected into the case.

451 U.S. at 465, 101 S.Ct. at 1874.

In *Buchanan, supra,* the defendant in a capital murder case asserted the defense of "extreme emotional disturbance." His sole witness was a social worker who read to the jury portions of several reports of the Kentucky Department of Human Services on defendant's mental condition. On cross-examination, the prosecutor was allowed, over defendant's objection, to have the social worker read from the report of a psychologist who examined defendant pursuant to a court order on the joint motion of the state and defense counsel. The report suggested defendant was "sophisticated" and "manipulative." Defendant argued that his fifth amendment privilege was violated because the report was ordered to assess his competency to stand trial and he

was not informed that the results might be used against him at trial. The court rejected defendant's claim, noting that defendant's counsel joined in the motion for the psychiatric interview, and pointed out that because defendant voluntarily raised a "mental status" defense, the state must be allowed to rebut defendant's evidence with its own psychiatric evidence.

> "[I]f a defendant requests such an evaluation or presents psychiatric evidence, then, at the very least, the prosecution may rebut this presentation with evidence from the reports of the examination that the defendant requested. The defendant would have no Fifth Amendment privilege against the introduction of this psychiatric testimony by the prosecution."

107 S.Ct. at 2917–2918.

▆▆▆ *Estelle, Buchanan, Jackson* and *Marano* demonstrate that although a defendant does not waive his fifth amendment privilege by asserting an insanity defense, such a defense does allow the state to use compulsion to develop its own evidence of defendant's sanity. A defendant's statements to his own psychologist are not protected by the fifth amendment because there is no element of compulsion present.[5] When a defendant is compelled by the court to see a psychiatrist or psychologist chosen by the state, defendant's fifth amendment privilege is implicated. To protect defendant's rights under these circumstances, the defendant should either be given *Miranda* warnings, or if defendant makes incriminating statements, the court should hold an *in camera* hearing to excise any such statements made by defendant during the interview.

---

**4.** The Supreme Court also held in *Estelle* that defendant's sixth amendment right to counsel was violated because defendant was examined without notice to his lawyer and without any legal advice prior to the hearing. The Court also pointed out that the state did not include the psychiatrist in its list of witnesses and that the psychiatrist's testimony was a complete surprise to the defense. 451 U.S. at 459, 101 S.Ct. at 1871. The element of unfair surprise was also a decisive factor in the Circuit Court of Appeals' holding that defendant's constitutional

rights were violated. 602 F.2d 694, 701–703 (5th Cir.1979).

**5.** With regard to a defendant's statements to his own psychologist, the appropriate analysis is one based on the attorney-client or doctor-patient privilege rather than on the fifth amendment. *See Marano, supra,* 179 W.Va. at 170 and at notes 4, 9, 366 S.E.2d at 131 and at notes 4, 9, and accompanying text. Of course, the privilege may be waived by the patient or client. Also, *see W.Va. Code,* 27–3–1 [1971].

 In the case before us, we find no violation of appellant's right not to incriminate himself. With regard to Mr. Brezinski's testimony, there was no compulsion acting on appellant to speak with his own psychologist that would invoke appellant's constitutional right to remain silent. With regard to the prosecutor's questioning appellant and the state's psychologist's testimony regarding appellant's refusal to speak, we find that the state was responding to appellant's assertion of an insanity defense. The prosecutor's questions were designed to explain why the psychologists were unable to form opinions about appellant's criminal responsibility, and to suggest that defendant was not insane.[6] The questions did not concern whether appellant murdered Mr. Goad.

The appellant made no incriminating statements to any of the psychologists. Each psychologist was testifying on the basis of his medical opinion, or lack thereof, not on "defendant's specific statements about his criminal offense." Once a defendant puts on evidence of his insanity, we cannot require the state to stand mute in response. Under the circumstances, it was not error for the court to allow the prosecutor to elicit testimony on appellant's refusal to discuss any of the circumstances surrounding the crime with the psychologists.

## DIRECTED VERDICT

 Defendant argues that the trial court committed error in failing to direct a verdict in his favor at the close of the state's case, and at the close of the trial. The evidence in this case was more than sufficient for the court to allow the jury to determine whether defendant committed the crime, and whether defendant was legally insane. In addition to defendant's spontaneous confession and disclosure of the location of the body to his neighbor the day after the murder, there was also ample physical evidence directly implicating defendant. Although the expert testimony was equivocal on the question of defendant's sanity, the defendant took the stand and the jury was allowed to observe his demeanor and hear his testimony before finding that he was legally sane. The trial court committed no error denying defendant's motion for a directed verdict.[7]

For the reasons stated above, the judgment of the Circuit Court of Mercer County is affirmed.

AFFIRMED.

---

6. As we pointed out in *Jackson,* 171 W.Va. at 335, 298 S.E.2d at 872, citing *Estelle, supra* at note 10, a defendant's refusal to be examined may result in sanctions such as preventing him from submitting his own medical evidence of insanity. Such a sanction would have been more destructive of appellant's insanity defense than the prosecutor's questions.

7. Appellant also asserts the trial court committed error by refusing appellant's instructions: 1,

2, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 19, 20, 21, 22, 23, 24, 27, 28, 29, 33a, 35a, 36, 36a, 37 and a, b, c, d, e. In his brief, appellant does no more than assert this error and cite a number of cases. Apparently appellant does not see great merit to this assignment of error and we find it sufficiently without merit that it is not fairly raised.