384 S.E.2d 145

**STATE of West Virginia**

v.

**James William SMITH.**

**No. 18437.**

Supreme Court of Appeals of
West Virginia.

July 27, 1989.

Joseph A. Colosi, Camper & Seay, Welch, for James William Smith.

Warren R. McGraw, II, Asst. Atty. Gen., Charleston, for the state.

PER CURIAM

The defendant, James William Smith, was convicted in McDowell County Circuit Court of second-degree murder. His primary assignments of error are that the evidence was insufficient to support his conviction and that his trial counsel was ineffective. We conclude that the case must be remanded to determine the voluntariness of certain confessions made by the defendant and to consider the merits of his ineffective assistance claims.

I.

Paul David Thompson died on February 16, 1988, from injuries received when he was struck by a train. Prior to his death, Thompson was found unconscious on the railroad tracks in Hensley, McDowell County. Witnesses stated that Thompson was lying face down with his buttocks on the top of one of the tracks. Thompson's pants were unzipped and pulled down to his

ankles. When approached, Thompson made a gurgling sound, but did not move. A head wound and a small pool of blood were visible. Thompson was struck by a train and killed soon after passers-by telephoned the authorities.

We may summarize the State's evidence in the case. Thompson spent most of February 16, 1988, in the company of the defendant. Earlier that same day, Thompson became involved in a heated argument with his wife and fired a shotgun into the air outside of his trailer. The defendant picked up Thompson, at his request, sometime in the late afternoon. When Thompson departed, his wife went to a magistrate in Welch and swore out a warrant for his arrest.

When Thompson entered the defendant's car, he pulled out a bottle of Valium and handed some of the pills to the defendant and to another man in the car. Thompson was an epileptic, and Valium was one of the medicines prescribed to control his epilepsy. The threesome drove around for over one hour and consumed sizeable quantities of beer. Later in the day, the defendant and Thompson drove to Fanrock to the home of Johnny Cook, a friend of the defendant. Thompson became visibly drunk at a party at Cook's home. The defendant received two more Valium pills from Thompson while at the party. Thompson was also heard to tell the defendant that he owed money for other pills provided by Thompson.

When they left the party, the two men traveled in the direction of Thompson's trailer. The defendant passed Thompson's wife and daughter in another car and stopped to talk to them. The defendant says that the exchange was heated and that the daughter struck Thompson in the face and caused his nose to bleed. This was denied by the two women. The defendant quickly drove away. It was his testimony that at 9:45 p.m., he let Thompson out of the car some twenty feet from his trailer.

The defendant drove to a local convenience store for gasoline and met Tommy Brooks. Brooks accompanied the defendant to his home to drink beer. While en route to his home, the defendant again met Thompson's wife and daughter and informed them that Thompson was at his trailer. The defendant and Brooks drove on to the defendant's home and remained there for an unspecified time.

Brooks asked to be returned to the convenience store, and on the way the defendant stopped at the top of Hensley Mountain to relieve himself. Brooks heard the defendant open the car's hatch and turned to see the defendant with a bumper jack in his hand. When Brooks asked the defendant what he was doing, the defendant replied that he was "throwing out garbage." Brooks stepped from the car and walked back to the defendant, but the "bumper jack wasn't there."

Only a few minutes before Thompson was killed, his wife saw the defendant's car at a distance as it traveled toward the railroad tracks. She assumed that the defendant and Thompson planned to drink at a nearby softball field. When she and her daughter drove to the field, they spotted Thompson's dead body on the tracks.

Later that night, the defendant drove alone to the home of Edward L. Lane, Jr. Lane's testimony was that the defendant arrived at 10:10 p.m., but insisted repeatedly that it was 9:00 p.m. Lane also stated that the defendant was nervous and "not satisfied" about the stated time.

Trooper M.A. Smoot contacted the defendant around midnight, questioned him, and took a statement. Trooper Smoot noticed what appeared to be blood stains on the defendant's trousers and boots and requested that he release them for inspection. The defendant went into his home and returned with another pair of trousers. Trooper Smoot asked that he release the blood-stained pants. When the defendant became belligerent, he was arrested for public intoxication. Early the next day, the defendant returned to the house with Trooper Smoot and retrieved the blood-stained trousers. The blood found on the trousers and boots was consistent with Thompson's.

Also the next day, Brooks telephoned Trooper Smoot about the bumper jack that was apparently disposed of by the defendant on Hensley Mountain. Brooks accompanied Trooper Smoot to the location where the defendant stopped the car, and the bumper jack was recovered nearby. Trooper Smoot stated that blood and hair particles were visible on the jack, but none was found by forensic experts.

Irvin M. Sopher, M.D., the State's medical examiner, appeared as an expert witness in the case. Dr. Sopher concluded that Thompson's cause of death was the injuries he received from the impact with the train. One wound, a laceration over the right ear, appeared to have been inflicted prior to that impact. Dr. Sopher also opined that the position of Thompson's body on the tracks was inconsistent with an epileptic seizure.

The defendant was convicted of second-degree murder on March 18, 1987, and was sentenced to imprisonment in the penitentiary for five to eighteen years. This appeal followed.

## II.

■ The defendant's first contention is that the State's evidence was insufficient to support his conviction. We summarized the rule for appellate review of a guilty verdict in Syllabus Point 1 of *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978):

"In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done."

■ The defendant correctly points out that the State's evidence was wholly circumstantial. We have held that to support a conviction in a circumstantial evidence case, the State's evidence must exclude every reasonable hypothesis of innocence. *State v. Phillips*, 176 W.Va. 244, 342 S.E.2d 210 (1986); *State v. Dobbs*, 163 W.Va. 630, 259 S.E.2d 829 (1979). We further noted in *State v. Bailey*, 151 W.Va. 796, 806, 155 S.E.2d 850, 856 (1967), that "[t]he weight of circumstantial evidence ... is a question for jury determination, and whether such evidence excludes, to a moral certainty, every reasonable hypothesis, other than that of guilt, is a question for the jury." These principles have coalesced in Syllabus Point 4 of *Phillips*:

" 'If, on a trial for murder, the evidence is wholly circumstantial, but as to time, place, motive, means, and conduct it concurs in pointing to the accused as the perpetrator of the crime, he [or she] may properly be convicted.' *State v. Beale*, 104 W.Va. 617, 632–33, 141 S.E. 7, 13 (1927)."

*See also State v. Robinette*, 181 W.Va. 400, 383 S.E.2d 32 (1989).

■ We find, in applying these standards, that the evidence in this case was sufficient. Under the State's theory, the motive for the murder was the theft of Thompson's Valium pills. Evidence also connected the defendant to the time and place of the discovery of Thompson's body. Stains of blood found on the defendant's boots and trousers were consistent with Thompson's. Testimony by Thompson's wife affirmatively placed the defendant in the vicinity of the railroad tracks at the time of Thompson's death. Furthermore, the weapon presumably used to strike Thompson was shown to be in the defendant's possession and disposed of by him under suspicious circumstances. We will not disturb the jury's determination of the weight of this circumstantial evidence.

## III.

In his next assignment of error, the defendant states that his counsel was ineffective in two main respects: first, in failing to move for the suppression of certain statements made by the defendant to Trooper Smoot; and second, in failing to

move for the suppression of the defendant's blood-stained trousers.[1]

Trooper Smoot took a statement from the defendant immediately prior to his arrest and two further statements within a few hours afterwards. In none of these statements was mention made of Thompson's bloody nose, a fact used by the defendant at trial to explain the presence of blood on his trousers and boots. In its cross-examination, the State impeached the defendant's testimony with this omission. Also inquired into by the State was the defendant's refusal to sign any of the statements. The defendant responded that all of the statements made to Trooper Smoot were physically coerced.[2]

 Under the law of this State, there is a mandatory duty on a circuit court to hear evidence *in camera* to determine the voluntariness of a confession prior to its admission into evidence, whether or not a request therefor has been made. Syllabus Point 1, *State v. Fortner*, 150 W.Va. 571, 148 S.E.2d 669 (1966),[3] *overruled on other grounds, State ex rel. White v. Mohn*, 168 W.Va. 211, 283 S.E.2d 914 (1981).[4] *See also State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261 (1982). We find from the record that the defendant's counsel failed to insist, by motion or otherwise, that the strictures of *Fortner* be followed. Whether this failure was prejudicial is uncertain, as it must first be determined whether the defendant's statements were voluntary. To make this determination, it is necessary to remand the case to the circuit court to hear evidence as required by *Fortner*. We au-

thorized this procedure in Syllabus Point 5 of *State v. Clawson*, 165 W.Va. 588, 270 S.E.2d 659 (1980):

> "Where there is a failure to hold an *in camera* hearing on the defendant's inculpatory statements, we recognize under *Jackson v. Denno*, 378 U.S. 368, 12 L.Ed.2d 908, 84 S.Ct. 1774 (1964), that the case will not be reversed for a new trial on this basis alone. Instead, it will be remanded for a voluntariness hearing before the trial court. If the trial court finds the statements are voluntary the verdict will stand. If, on the other hand, he finds the statements to be involuntary, the verdict will be set aside unless the trial court determines that this constitutional error is harmless beyond a reasonable doubt."

 We note also that the State asserts that the ineffective assistance claims in this case are not apparent on the face of the record and are, therefore, more suitable for development in habeas corpus. We acknowledge the statement in *State v. England*, 180 W.Va. 342, 354, 376 S.E.2d 548, 560 (1988), that ineffective assistance claims "are primarily bottomed on facts which cannot be adequately determined from the appeal record." For this reason, *England* fashioned a rule that authorizes us to decline to reach such claims "so as to permit the defendant to develop an adequate record in habeas corpus." We stress that *England* was not intended to limit or restrict the options available to us in ineffective assistance cases. To the contrary, *England* makes it abundantly clear that

---

**1.** The defendant also cites eleven other instances in which his counsel failed to object to the admission of improper evidence.

**2.** We discussed at some length in *State v. Goff*, 169 W.Va. 778, 289 S.E.2d 473 (1982), the law surrounding the use of a coerced confession and made this summary in Syllabus Point 2: "A confession that has been found to be involuntary in the sense that it was not the product of the freewill of the defendant cannot be used by the State for any purpose at trial." *See also State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261 (1982) (the requirement of prompt presentment to a magistrate as it may affect the validity of a confession).

**3.** Syllabus Point 1 of *Fortner* states, in part: "It is the mandatory duty of a trial court, whether requested or not, to hear the evidence and determine in the first instance, out of the presence of the jury, the voluntariness of an oral or written confession by an accused person prior to admitting the same into evidence[.]"

**4.** This rule is subject to one limited exception. If the circumstances of the confession suggest that it is spontaneous and voluntary, and the defendant does not object or request a voluntariness inquiry, admission of the confession is not error. *State v. Baker*, 180 W.Va. 233, 376 S.E.2d 127 (1989). *Baker* is inapplicable to this case since the statements made by the defendant were not spontaneous.

flexibility is retained to choose the most efficacious means to reach the merits of ineffective assistance claims in individual cases.

We are led to conclude, on authority of *England*, that the defendant should be permitted to develop his ineffective assistance claims on remand. We have already ruled that this case must be remanded to determine the voluntariness of the defendant's confessions. It is appropriate that the defendant's ineffective assistance claims, which hinge in part on the confessions, should be considered at the same time.

We are reinforced in this conclusion by the fact that the defendant's second claim of ineffective assistance is not factually developed. The defendant asserts that his arrest and post-arrest detention were improper and that such impropriety tainted his consent to search his home. It is clear from the record that his counsel failed to move to suppress the blood-stained trousers recovered from this search. This claim by the defendant raises grave Fourth Amendment questions.

We, therefore, direct the circuit court on remand to conduct such proceedings as may be necessary to resolve the merits of the defendant's claims of ineffective assistance.

## IV.

The defendant also assigns two evidentiary errors. First, the defendant objected to certain testimony by Trooper Smoot as hearsay. Trooper Smoot repeated in his testimony a statement by Brooks that the defendant "tossed [the bumper jack] over the hill." As the defendant correctly points out, Brooks testified that he did not see the defendant dispose of the jack.

In Syllabus Point 9 of *State v. Richey*, 171 W.Va. 342, 298 S.E.2d 879 (1982), we made this summary of the definition of hearsay: "We have generally defined hear-

say as where a witness testifies in court with regard to out-of-court statements of another for the purpose of proving the truth of the matter asserted." A similar definition is found in Rule 801(c) of the Rules of Evidence, where hearsay is termed "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

Trooper Smoot's testimony was unquestionably hearsay. It was a statement made by an out-of-court declarant, Brooks, and was offered for its truth. Its admission, therefore, was erroneous. We nevertheless find that the error was harmless. The sole purpose of the objectionable portions of Trooper Smoot's testimony was to connect the bumper jack to the defendant. This connection was proved by other competent evidence, most notably by the testimony of Brooks, who was present and subject to cross-examination.

Another point of error raised by the defendant concerns the admission into evidence of the bumper jack. The defendant states that the jack was not sufficiently connected with the murder. We conclude otherwise. Trooper Smoot stated that the jack, as it was recovered from Hensley Mountain, bore blood stains and hair. The fact that the jack was in the defendant's possession, and was disposed of by him, was sufficiently proved by the testimony of Brooks. The jack was, therefore, subject to the rule set forth in Syllabus Point 8 of *State v. Humphrey*, 177 W.Va. 264, 351 S.E.2d 613 (1986):

> " ' "In the trial of an indictment for murder all instruments which the evidence tends to show were used in the perpetration of the crime, may be produced for the inspection of the jury." Syl. pt. 1, *State v. Henry*, 51 W.Va. 283, 41 S.E. 439 (1902).' Syllabus Point 8, *State v. Gum*, 172 W.Va. 534, 309 S.E.2d 32 (1983)." [5]

---

**5.** In another assignment of error, the defendant contends that the court erred in amending one of his offered instructions. Defendant's Instruction No. 4 would have informed the jury of the effect of a lack of motive where the evidence in the case was "wholly circumstantial." The court amended the instruction by removing the word "wholly." We find that the court's amendment did not prejudice the defendant, as the instruction plainly informed the jury that the

## V.

For the reasons set forth in Part III of this opinion, the case is remanded to the McDowell County Circuit Court to determine the voluntariness of the defendant's confessions in accordance with the principles set forth in *State v. Fortner, supra,* and to determine the merits of the defendant's other claims of ineffective assistance of counsel.

Remanded with directions.

case under consideration was a circumstantial one.